Brockenbrough, J.
I have never had a doubt, that an executor cannot be charged in detinue, merely on the possession of, and detention by, the testator. The thing sued for-, which is demanded in specie, must have come to the hands of the executor himself, and be detained by him, to justify an action of detinue against him. 1 Chitt. Plead. 120. 1 Wms. Saund. 216. a. note 1. Le Mason v. Dixon, sir W. Jones 173, 4. This seems to result, necessarily, from the decision, that if a bailee of a thing burn it, his executor shall not be charged in detinue : in such case, the action dies with the person. Bull. Ni. Pri. 50. quoting 1 Roll’s Abr. 607. 8 Vin. Abr. Detinue. D. pl. 4. p. 28. who quotes the Year books. This is very intelligible doctrine. If the thing be destroyed, so that it never has been and never can be in possession of the executor, why should he be chargeable with the redelivery of it, either personally, or as executor ? In such case, the action for money had and received, according to the case of Hambly v. Trott, 1 Cowp. 377. lies against the executor, to recover the value. And it is most probable, that trover also lies, under the equity of our statute, 1 Rev. Code, ch. 104. § 64. p. 390. which is an enlargement of the statute 4 Edw. 3. ch. 7. de bonis asportatis in vita testatoris. 1 Wms. Saund. 216. a. note 1. Again, if there be several executors, and one only has *349 the possession the action must be brought against him alone. Bro. Abr. Detinue, pl. 19. 2 Stark. Law Ev. part 4. p. 494. This last proposition clearly refutes the idea, that the executor may be chargeable by virtue of a constructive possession; for if the executors were so chargeable, then all of them might be sued in detinue, and not that one alone who had the actual possession.
I am also satisfied, that if the testator having during his life detained the thing, it then comes to the possession of his executor, detinue may be brought against the executor as such; and this by the common law. Indeed, it seems that the plaintiff has an election on this subject. If he elects to charge the executor personally, on his own possession, he may sue him in his own right, as he would sue a stranger into whose hands the chattel might come; but if he prefers to bring detinue against him as executor on his continued possession, he may pursue that course. The antient authorities render this too clear to be now controverted. 8 Vin. Abr. Detinue. D. pl. 1. p. 28. Rastall’s Entries, 212. pl. 4.
I cannot, however, agree in opinion with a majority of my brethren, as to the kind of judgment and execution, which ought to be rendered and sued out against the executor, when he is sued as executor in detinue. On this subject, we are left in the dark by the old authorities, as no old forms of judgment and execution against executors in detinue, have been found. It seems clear enough, that if the plaintiff elects to proceed against the executor, personally, in detinue, as he would against a stranger, the declaration, verdict, judgment and execution, must be all against him personally. In such action, the plaintiff recovers every thing except the damages for the detention by the testator in his lifetime. If he pursues this course, he must either relinquish his claim for damages for the detention in the testator’s lifetime, or he must bring a separate action of assumpsit for them against the executor, for so much money had and *350 received by the testator to the plaintiff’s use. But if the plaintiff chooses to bring detinue against the executor, as executor, on his continued detention of the thing, it seems to me, that the judgment and execution should correSp0n(j -Yvitla the nature of the claim: that the judgment should be, that the plaintiff recover from the defendant as executor the thing, if to be had, and if not then the alternative value, to be levied de bonis testatoris, and damages for the detention by the testator, and by the executor, also to be levied de bonis testatoris. If this be not so; if the plaintiff could not obtain a judgment against the executor for the alternative value to be levied de bonis testatoris; then, surely, it cannot be proper to bring detinue at all against the executor as executor, and the action should in all cases die with the testator. It would seem to be absurd to bring detinue for a specific thing, when neither that thing, nor its value, can be recovered by that action. On the rendition of the judgment, the plaintiff takes out a distringas. As this is a process which does not immediately act on the thing itself, but is intended to coerce the delivery of it by means of a sequestration of the defendant’s estate into the hands of the commonwealth, it should issue against the estate (lands and chattels) of the executor himself, and not that of the testator. If the thing cannot be had by means of this rigid process, the regular course is for the plaintiff to apply to the court to supersede it, and then the fieri facias should be against the testator’s goods in the hands of the executor, as well for the alternative value as for all the damages of detention. By such judgment and execution, there is an entire harmony throughout all the proceedings. If the executor is sued personally, judgment and execution are had against him de bonis p-o'priis: if he is sued as executor, the judgment and execution are de bonis testatoris. But if he is sued as executor, and judgment is recovered and execution awarded against him for the *351 alternative value de bonis propriis, and for the damages de bonis testatoris, there is an entire want of harmony and consistency in the proceedings. I cannot understand, how there can be a difference in the responsibility of the executor, as to the value of the thing detained by himself, and the damages for detaining them by himself. If he is liable, in such case, for the value de bonis propriis, he is surely also liable for the damages de bonis propriis; for the damages are only an incident to the detention. And if the judgment for the damages for his own detention, should bo (according to the opinion of the court) de bonis testatoris, I do not see why judgment for the principal subject should not also be de bonis testatoris.
I am of opinion that a scire facias against the executor was properly sued out in this case. As, at common law, the action of detinue lies against an executor, as such, on his continued possession, so under our statute, if the testator dies pending the action of detinue against him before verdict, the action shall not abate, if,the plaintiff elect to continue it: he may have a scire facias against the executor, and may proceed to judgment against him, in the same manner as if he had brought a new action of detinue against him. I think this clearly results from the language of the statute—“ Such action or suit shall not a.bate, if the same were originally maintainable by, or against an executor or administrator.” Was the sci. fa. which was sued out in this case sufficient ? As the statute merely provides, that the plaintiff &c. may have a scire facias to shew cause, generally, why the action, or suit shall not be proceeded in to a final judgment, I think it is not incumbent on the plaintiff to have any other than such a general one as was here issued. But as the defendant as executor cannot be made liable to any judgment, unless the specific thing sued for has come to his possession, it would be a convenient practice to insert in the scire facias a suggestion *352 to that effect. Such a suggestion would render it unnecessary to file a declaration or count charging the fact. If however such a suggestion be not inserted in the scire facias, I hold it to be indispensable, that on the re-tum 0£ tke sc-re j-acias executed, the plaintiff should file a count alleging such possession. Such was the opinion of the court in the case of Allen's ex'or v. Harlan, decided by us in February last; and, in this respect, I still adhere to it. If there be no allegation of the fact, that the specific thing has come to the hands of the executor, there can be no proof of it; for to allow such proof would be a deviation from the regular course of legal proceedings. The plaintiff, then, could not obtain a judgment that the executor deliver the thing to him, or if he were to obtain such judgment, the record would exhibit the singular spectacle of a judgment rendered against an executor, without either allegation or proof of a fact that is indispensably necessary to support the plaintiff’s action against him.
I am of opinion that the judgment be reversed, the verdict set aside, and the cause remanded to the circuit court for further proceedings.
Carr, J.
It was admitted by the counsel for the defendant in error, that this personal judgment against the executor was wrong: and assuredly it was palpably so, seeing that no possession in the executor was charged, and that the plea put in issue solely the question whether his testator had detained. But the counsel for the plaintiff in error charged the proceedings with a much more serious error; namely, that the scire facias did not make a case shewing that the action could be revived against the executor. Our statute provides, that where either party dies before verdict &c. the action &c. shall not abate, “ if the same were originally maintainable by or against an executor or administrator.” Now the question is, can an action of cLetinue be maintained against *353 an executor upon the possession of his testator alone ? The books, with one voice, say no: 1 mean the old books, for the more modern say nothing about it,—the action of detinue being almost entirely supplanted in England, by that of trover, from the risk encountered by the wager of law.
Bro. Abr. Detinue de biens. pi. 19. “ Detinue does not lie against executors unless by reason of the possession. And if there are several executors, and the one has the possession, action lies against him only:” he cites 11 H. 4.46. Roll’s Abr. Detinue. D. p. 607.—“ If the bailee of a thing die, detinue lies against his executor, if he take possession' of it. So, if he dies intestate, and a stranger takes it, detinue lies against him, or any other to whom it may come. But if the bailee of a thing by indenture, burn it, and die, his executor shall not be charged in detinue, because lie shall not be chargeable, without possession in him; for the action dies with the person.” In Le Mason v. Dixon, sir W. Jones 173. the court said, !< If goods were taken from J. S. tortiously, in this case, if J. S. die, his executor, although at common law, he could not have trespass, yet if the goods were not consumed, he might have replevin, and also a writ of detinue; for the thing itself is to be recovered, and the property continues to the executor. And so, if J. S. takes goods tortiously, and dies, if the goods have been consumed, no trespass lies against the executors of J. S. but if the executors have the goods in their possession, then- detinue lies against them, upon their own possession.” In 3 Com. Dig. Detinue. D. speaking of detinue, it is said—“ It does not lie against him who never had the goods; and therefore it does not lie against an executor upon a bailment to his testator, if the goods never came to the possession of the executor.” The same law is laid down, almost in the same words, in 8 Vin. Abr. Detinue. D. If we look to the books of entry (among the best tests of the law), and especially to that *354 book of the highest authority, Hostal, from folio 204 to 216. title Detinue, we find many declarations m original actions against executors for chattels of different kinds, charters and muniments of title in boxes &c. in every one 0f which,,after charging that the goods were bailed, or came by finding to the testator, it is then alleged thus—“ Yet the said A. B. (the testator) in his fife, and the said executors since his death, to wdiose hands and possession the said goods (describing them) at M. in the parish and ward, and on the day and year aforesaid, came, although often required, the said goods to the plaintiff have not delivered, but the same” &c. Sometimes, the executors plead that the goods were delivered to their testator, as a pledge to secure a certain sum lent to the plaintiff, which sum has not been returned, and therefore they hold them; and this is a good plea. Sometimes, not admitting that the goods came to their testator’s possession in manner and form as charged, they plead that they found them among the goods and chattels of their testator, and that they bring them into court, ready to deliver them to whom the court may direct,—or ready to deliver them to the plaintiff; and thereupon, the executors are thereof released and exonerated. There are forms too, of scire facias to revive judgments against executors; in which, uniformly, after reciting the judgment, it is added, “yet execution of the judgment aforesaid remains to be done; and the aforesaid (specific thing) after the death of the said A. B. to the hands and possession of the said C. D. executor of the will of the said A. B. deceased came, as by the suggestion of the said plaintiff we are given to understand,” &c.
These authorities unquestionably prove, that detinue cannot be maintained against an executor, upon the possession of his testator, but the plaintiff must charge and prove possession in him. It was contended, that this might be a constructive possession, which the law *355 would cast upon the executor, wherever the testator had been in possession. But it is impossible to hold this, without overruling at once all the authorities. If they mean any thing, they mean a real, actual possession in the executor himself, such as would enable him to clear himself, by delivering up the chattels, or make him guilty personally of that detainer, which is the gist of the action, and which alone could justify the issuing against him that process which seizes into the hands of the officer, all his own lands and chattels, by which ho is distrained till he deliver the specific thing. I am clearly of opinion, then, that as an original action of detinue cannot be maintained against an executor without charging possession in him, so neither can a scire facias to revive such action, be supported against him, without the same suggestion and proof. The proceeding against him here therefore is bad ab ovo.
Many other ingenious speculations and subtle objections were raised and discussed at the bar, as to all of which, I wish it distinctly understood, that I give no opinion. Time was when few were more apt than myself, to chase the obiter points started at the bar; but experience has taught me, that it is safest to confine myself to the matters necessary to the decision of the particular case.
I wish it distinctly understood, that I do not mean by any thing said here, to detract from the case of Cloud v. Catlett’s ex’or, in the slightest degree. My best judgment approves that decision, as sound and clear law. That was a scire facias against bail, liable by his undertaking in the original action; and I think, that the scire facias was sufficiently full, and ga,ve sufficient notice, that the distringas had been superseded, and the ca. sa. issued. I consider the case before us, essentially different.
At common law, actions of tort died with the person: but this principle being found oppressive and unjust, *356 where the tort involved the taking of personal properly, the rule was so modified as to take such cases out of its operation. Under this modification it is, that if the testator take goods tortiously and die, though trespass will not pe iús executor, yet if the executor have the goods in his possession, detinue lies against him upon his own possession. At common law, all actions, whether maintainable against the representative or not, abated by the death of the party, plaintiff or defendant. To remedy this mischief, the statute 8 and 9 Will. 3. ch. 11. and our statute taken from it, enacted, that the action shall not abate, if originally maintainable by or against the representative, but shall be revived by scire facias. Whether detinue be within this statute or not, depends upon the fact of the executor’s having taken possession of the chattel: if he has taken actual possession, he might be sued by original action, and a scire facias to revive lies; if not, there can be no scire facias. Ought not the scire facias, then, to suggest his actual possession, in order to shew a right to revive, a cause of action ? a ground on which a judgment may be founded ? Suppose the scire facias stated an action pending against the testator of assault and battery, and sought to revive it against the executor; could this be sustained ? Yet it is equally sustainable with detinue, where no possession has come to the executor. Suppose, upon the return of the scire facias executed, the executor refuses or neglects to enter his appearance; the statute says, that, in such case, the court may proceed to final judgment, in the same manner as if an appearance had been entered; yet will it be contended, that it will so proceed against an executor, where he is not charged with possession of the chattel, upon which possession alone he is liable ? In fine, must not the scire facias, to bring the case at all within the statute of jeofails, shew that it is of that class, which are originally maintainable against an executor ?
*357 I am sensible that in these latter remarks, I have been guilty of tautology: I have preferred this, to leaving at all in doubt, my opinion in Cloud v. Catlett's ex'or, or the clear ground of distinction, which, I think, exists between that case and this.
Cabell, J.
This case is very similar to Allen's ex'or v. Harlan, decided last winter. Mr. Johnson was not concerned in that case; and as the decision there would be a direct authority against his client, the defendant in error in this case, he requested, that we would review the case of Allen's ex'or v. Harlan; to which we assented, the more readily, because that case had been argued without much preparation on the part of the bar. The re-argument has been one of great research and ability, and has to my view, cast new lights on some branches of the subject.
I am still decidedly of opinion, that in a,n original action of detinue against an executor, it is absolutely necessary to shew that the testator had possession of the property before his death, and that it has subsequently come to the executor. This is proved, beyond all doubt, by the authorities referred to in Allen's ex'or v. Harlan; and, indeed, I understand Mr. Johnson as admitting it. 1 am equally confident, that, in a scire facias under the statute, to revive against an executor, an action of detinue which was depending against the testator at the time of his death, the executor is liable only in those cases where the possession of the testator has been, in fact, transmitted to the executor. Thus far, I still approve the decision in Allen's ex'or v. Harlan. But I am compelled to abandon the opinion, that it is necessary, that the possession of the executor shall be stated in the scire facias or in the declaration upon the scire facias.
The omission to state, even in a scire facias at common law, what is essential to the plaintiff’s recovery, is no cause of demurrer. Thus, in a scire facias against *358 the executor of one who had been special bail in an action of detinue, to shew cause why the plaintiff should not have execution of the judgment, against the estate of the bail in the hands of the executor, it was not either that the distringas for the specific thing had been superseded, or that a ca. sa. against the principal had been returned non est inventus. Nobody doubted that these things were essential to the plaintiff’s right to recover. But the court held, that the absence of them was not to be taken advantage of by demurrer; but must be shewn by plea. Cloud v. Catlett's ex'or, 4 Leigh 62. If this be the case in a scire facias at common law, it is much more clearly so, in a scire facias under our statute, for the revival of a suit. The statute provides, that “ where any personal action &c. is now or shall be depending &c. and either of the parties shall die &c. such action or suit shall not abate, if the same were originally maintainable by or against an executor or administrator, but the plaintiff &c. shall and may have a scire facias against the defendant, or, if he be dead, against his executor See. to shew cause, generally, why such action or suit shall not be proceeded in to a final judgment.” It then provides, that if the scire facias shall be returned executed, and the executor &c. shall neglect or refuse to enter his appearance, the court may proceed to final judgment &c. in the same manner as if he had entered his appearance: and if-the executor Sec. shall appear to the suit, upon the scire facias being returned executed, “ or if, without a scire facias, he shall voluntarily enter himself &c. defendant to such suit, then and in either case, such executor &c. shall have liberty to plead de novo to the plaintiff’s action, every such plea or pleas, as an executor &c. may lawfully plead, or as the deceased party might or could -have pleaded, if he or she had lived—And the court shall proceed to final judgment or decree, for or against the executor &c. in the same manner as if the original writ *359 had been issued against him as executor” &c. I have • • • been thus particular in reciting the statute, because I think its provisions are so clearly expressed, as to leave no doubt as to the intention of the legislature. In every personal action originally maintainable by or against an executor, the party is entitled to a scirefacias. How did the legislature intend, that the courts should determine what actions are maintainable by or against executors or administrators ? Most certainly, by the general nature of the action itself, not by circumstances happening after the death of the party. If this be so, the statute must be construed in the same way, as if it had provided, that no personal action shall abate, unless it be of that class of actions which die with the person. Wherever it is not of that class, the party may have a scire facias, calling on the executor or administrator to shew cause why the action shall not be proceeded in to a final judgment. If any thing has happened since the death of the party, which will make it improper to proceed to judgment against the executor or administrator, or if something has not been done, the existence of which is essential to the plaintiff’s recovery, these matters may and ought to be pleaded by the executor, as cause why the suit shall not be proceeded in to judgment against him. I think it manifest, that the legislature did not mean to encumber the scire facias with any minuteness of allegation, nor to require a declaration upon the scire facias. The general nature of the action, the parties to it, the death of one of them, and the qualification of the executor or administrator, are all the circumstances, which the nature of the case, and the object of the legislature, require. That the legislature attached no importance to the scire facias, farther than as a vehicle of notice to the executor or administrator, of the general nature and pendency of the suit at the death of his testator or intestate, is manifest from the provision, that if the executor will voluntarily enter himself defendant to *360 the suit, no scire facias at all is necessary. Besides, whether there be, or be not a scire facias, the papers in the original suit give the executor sufficient information of the plaintiff’s demand; and if there be any thing maj¿ng improper to enforce the demand against the executor, he' must be better acquainted with it than the plaintiff, and it is his duty .as well as his right to state it by plea.
This brings us to the plea of the defendant in this case. He might have pleaded that he did not detain the property sued for, and this would have thrown upon the plaintiff the burthen of proving, not only his own title, but possession in the defendant. He chose, however, to rely on the plea, that the testator did not detain. I see. no objection to the form of this plea, nor to its matter, as constituting an effectual defence. Issue having been taken upon it, and found in favour of the plaintiff, by a general verdict, I think he was entitled to a judgment according to the verdict. I am of opinion, however, that the court erred in rendering a personal judgment against the executor for the value, and the damages found by the jury. I understand it to be admitted, that the judgment was wrong, in this respect, as to the damages. And I concur with judge Brochenbrough, that it would be quite an anomaly, to distinguish between the principal and the incident, by giving one sort of judgment for the value of the property, and a different one for damages for detaining the property. By resorting to the scire facias, the plaintiff made his election to proceed against^the executor, as executor, and thereby restricted his claim to a judgment de bonis testatoris.
I am of opinion, that the judgment should be reversed, and judgment entered for the plaintiff for the slave in the declaration mentioned, if to be had; if not, for the value and damages found by the jury, and the costs, to be levied de bonis testatoris.
*361 Brooke, J.
The principles which are to govern this case, were properly settled in Allen’s ex’or v. Harlan. The difficulties that seem to arise in the action of detinuc against an executor, grow out of the anomalous character of the remedy for the wrong done by the testator, and that done by the executor, combined in one and the same action, and the necessity of shaping the proceedings to give redress for both. In one aspect, it is a remedy for the wrongful detention of goods from the rightful owner by the testator; in the other, for the wrongful detention by the executor of the same goods, which have come to his hands as executor. The judgment is made to conform to this double aspect. As regards the assets, the judgment is de bonis testaloris, not only for the damages resulting from the detention by the testator in his lifetime, but also for the damages incurred by the executor’s detention; for though, in general, the executor is personally liable for his own acts, yet his detention is considered by the law as an incident belonging to his office. But with regard to the owner of the goods, the executor’s detention is a wrong of his own, which subjects him, personally, to a judgment for them, or their alternative value. Newsum v. Newsum, 1 Leigh 86. 1 Wms. Saund. 216. a. note 1. But to subject him to such judgment, his possession must be an actual possession at some time before the suit brought, not, as was argued by the counsel for the defendant in error, a possession by intendment of Jaw. This is too well settled to be now controverted. In the case of Le Mason v. Dixon, sir W. Jones, 173, 4. where there were three executors, and the possession of the goods had been taken and held by one of them, it was held, that the action could only be brought against the executor in possession ; which is wholly irreconcilable with the idea of a constructive possession in the executors. Nor does the case of Burnley v. Lambert, 1 Wash. 308. give any countenance to it. The principle of that case would be ap *362 plicable, if the executor had been in actual possession, and had parted with it before action brought, for the reasons there assigned; but the case gave no countenance to the idea of a legal intendment of possession in the executor, who in truth never had possession, from the fact of his testator having had the possession. In the case before us, then, the actual possession of the goods by the executor, at any time, being nowise alleged in the pleadings, the judgment must, for that cause, be reversed, and the proceedings set aside up to the scire facias, in order that the plaintiff may file a declaration on the scire facias, alleging that the slave demanded came to the possession of the executor, the defendant. This practice, I think, would be most conformable with the statute giving the scire facias to revive. Or, the plaintiff may move to quash the scire facias, and sue out another, suggesting the possession of the defendant.
I can see nothing in the statute to change the pleadings in the case. Detinue is not an action purely ex contractu, or ex delicto, but partakes of both. That it does not die with the pérson, is very clear. But to give a •construction to the statute, which would authorize a judgment against an' executor in detinue, in a case in which it is neither alleged nor denied, that he was ever in possession of the goods (which would be the case, if such possession was not alleged in the scire facias, or in a declaration upon it, and judgment by default should be rendered against him), would be a novelty in pleading that could not have been intended. And this consideration that the judgment may be by default, shews, that the possession of the defendant, which is the gist of the proceeding against him, must be alleged by the plaintiff, in some form, and proved; instead of the fact of the executor never having had possession, being matter of defence. Upon these principles, I think the case of Allen's ex'or v. Harlan was correctly decided.
*363 The case of Austin's ex'or v. Jones, Gilm. 341. was alluded to in the argument of this case; and though I can see nothing in that case which has'any application to this, I shall make a few remarks itpon it. There, the jury found, that one of the slaves demanded in the declaration, had died since the action was brought. The old books give us no similar case; and I have searched again to find any such plea as the death or loss of the property pending the action. All the pleas in detinue may be seen in 3 Chitt. Plead. 613-518. There is not one that hints at such a defence. It must be admitted, that the death or loss of the thing in controversy, is no defence in trover. The hardship was pressed in the court, in Austin's ex'or v. Jones ; but, as the plaintiff had his election to bring trover or detinue, and as no such defence could be made in trover, it was not perceived that it could be made in detinue. The technical difference, that in trover the plaintiff gives up his title to the thing, and only claims damages for the conversion, whereas in detinue he claims the thing itself and damages for the detention, did not appear to vary the ground of his claim in either action. In both, the plaintiff’s title to the thing must be asserted, though the redress given by the two actions is different, in case the thing is to be had. But if in detinue the thing is not to be had, the plaintiff recovers the value and damages for the detention ; which is exactly what he would recover in trover. In a case decided by chief justice Frowic'/ce, it was held, that the defendant has his election to deliver the thing, or the value to the plaintiff; 8 Vin. Abr. Detinue. E. pl. 15. p. 40. And, as early as 17 Edw. 3. it was held, that in detinue for charters, it was no defence that the charters were burnt; and though that case was after-wards overruled, it was on the ground, that though there could be no judgment for lost charters, there should be judgment for the value of the land. 17 Ed. 3. 45. b. Roll’s Abr. 607. 2 Bac. Abr. Detinue. B. p. 318. I *364 have noticed the distinction between detinue for charters and detinue for goods, in my opinion in Austin's ex'or v. Jones. The process diSers, as well as the nature of the relief. In the first, the value of the title, of which the charters are the evidence, is the object, not the paper and wax; and where these were not to be had, the value of the land was adjudged. In detinue for goods, the thing itself is the object, not the evidence of title to it; and there is no case of detinue for goods, in which judgment has been rendered for the value of the goods and damages for the detention, omitting the goods themselves, the object of the action.
Tucker, P.
If the case of Allen’s ex'or v. Harlan is to be considered as properly adjudged, there can be no doubt, I think, that this judgment must be reversed. But as that case was not very fully argued, the court were willing to review it with the aid of the experienced and learned counsel concerned in this case. They have obviously given the most laborious attention to this obscure and interesting branch of the law, and have furnished us with all the light which can be derived from 'authority, or afforded by their own profound and luminous expositions. With all these advantages, I have reconsidered our former decision, and if I have not been convinced of error in the opinion then delivered, I have had the good fortune at least of finding my difficulties heretofore in a great degree dispelled, and my confidence in our first judgment confirmed and strengthened.
The first proposition I shall lay down in this case, is, that where an executor takes possession of the property of a third person, of which his testator died in possession, he is liable to an action of detinue at the suit of the true owner, either in his individual character, or as executor, at the election of the plaintiff. That he is liable in his individual character, seems not only to be established by the case of Royall v. Eppes, 2 Munf. 479. but *365 by ancient cases, and by the reason of the thing. For, upon the supposition that the testator had not good title, his dying in possession can be no justification for a detention by the executor, who being thus guilty , of a wrong, is personally liable for that wrong; for, peradventure, his testator’s estate may not be adequate to make compensation for his continued detention, or his eloignment of the property, and he ought to be responsible himself for his own a,ct. On the other hand, if the testator wrongfully detained and died in possession, it would be hard that the owner should be compelled to look to the executor, who may bo insolvent, instead of having recourse against the estate of the wrong-doer, at least for the damages for its detention. Hence, the true owner may, at his election, sue the executor as such in detinue, declaring upon the possession and detention of the testator, and on the executor’s continued possession and detention, since his death. This course of things seems not only consistent with reason, but it is clearly supported by authority. “ If the bailee of a thing dies, detinue lies against his executors, if they take it;"8 Vin. Abr. Detinue. D. pl. 1. p. 28. And the declaration charges the finding or bailment and detention by the testator, and the subsequent possession and detention by the executor; Rastall’s Entries 210. The form of declaring in such case, must be taken to be conclusive of the point.
The, next proposition I shall lay down, I think equally clear. If the defendant in detinue dies, and the possession comes to the hands of his executor, the action may be revived against him by scire facias under our statute. For we have already seen, that the action lies against him as executor, if he takes the possession after his testator’s death; and the statute expressly gives the scire facias, and provides that the action shall not abate, “ if the same were originally maintainable by or against the executor;” that is, if an original action *366 could be maintained by or against him. On this point, therefore, there can be no difficulty.
Thirdly, if the defendant in detinue dies, and the possession does not come to the hands of his executor, the executor }s not pable to an original action, either personally, or as executor; and by consequence, he is not liable to a scire facias. For, in the first place, it is expressly laid down, that if the bailee burns the thing and dies, his executor shall not be charged in detinue, for the action dies with the person; 8 Vin. Abr. Detinue. D. pl. 4. p. 28. Now, if the action dies with the person, it is not one which can be originally maintained against executors, and therefore a scire facias does not lie. For the true meaning of the statute was not to give a right of action which did not exist, nor to revive one which was extinct, but merely to prevent the delay and cost of suing the executor in an original action, instead of carrying on the existing suit against him.
Again; the Year books are full of cases to shew, that the action of detinue does not lie against an executor, unless by reason of his possession. Thus, in the case just cited from Viner, it is said the executor shall not be charged in detinue, because he shall not be charged without a possession in him; citing 11 Hen. 4. 46. b. And in 43 Ed. 3. 29. and 11 Hen. 4. 45. b. cited Vin. Ibid. pl. 1. it is said, the action lies against him, if he take the thing; but it does not lie against him unless by reason of the possession; and if there are three executors, and only one has the possession, the action lies against him only; Ibid. And this possession, I take it, must be an actual, and not a constructive possession; for otherwise, the last case could not be law, since the constructive possession would be equally in all. Moreover, we find it decided, that executors are no longer chargeable than during the time they have the possession; for they are not bound to keep the property, which does not belong to their testator, but may relin *367 quisli the possession; and if they relinquish it, they are discharged, though if they destroy the property, trespass lies. 8 Vin. Abr. Detinue. D. 5. pl. 19. p. 34. citing Bro. Chartres de terre, 72. These authorities are recognized by the most learned and approved writers, and are handed down to us as constituting the law of the subject. The Tear books are cited by Brooke, Detinue de biens, pl. 19. And he is cited by Blackstone, 3 Comm, and by Chitty, vol. 3. 120. who lays down the doctrine, that “ detinue cannot be supported against a person who never had the possession of the goods; as against an executor on a bailment to his testator, unless the goods came to the possession of the executor. He also cites 2 Bulstrode 308, The editor of Saunders too, among the most learned and acute of the profession, gives us the same doctrine, and cites in addition sir W. Jones 173, 4. If authority, then, can have any weight, if we are not to reject the received and uncontradicted doctrines of ages past, for a new theory of the action unsupported by authority, we must pronounce that the action of detinue does not lie against executors as such, where they have never had the possession; a.nd by consequence the scire facias does not lie against them.
It was said, however, that the testator having died in possession, the law will intend that the possession is in the executor, ánd will not permit him even to controvert it. For this position no authority was cited; but it was attempted to be supported by inference from Burnley v. Lambert, 1 Wash. 308. But that inference is not to be sustained. Though the law might fairly intend, against the wrongful detainer of property, that it was still in his possession, notwithstanding he had parted with it, such an intendment would be grossly absurd and unjust, as to the executor, who never had possession at all. Indeed, even as it respects the wrongdoer himself, the law does not intend a continued possession, if the defendant can shew he has been legally *368 dispossessed. A fortiori it would seem that such possession should not be intended, where the party never has had any possession at all: for' he is certainly as guiltless, as the man who was once a wrong-doer, whose wrong has not been repented of, but has only been purged by a legal dispossession. To intend the executor to be in possession,—to refuse him a right to controvert that fact, on which his liability depends,—to enter a judgment against him personally, for the specific thing, or its alternative value, where he has not, and never has had, the chattel in his possession,—to distrain his lands and tenements, goods and chattels, until he shall either deliver up property which he has not got, or pay the value out of his own purse of what he has never had,—would be a refinement in cruel injustice hitherto unknown to the law.
A remedy is however offered, of which he may avail himself: he may move the court to supersede the distringas under our statute. To this suggestion various considerations are opposed. 1. It is a poor compensation for the vexation and wrong of being stript of every thing in the world, to be enabled to obtain restitution upon a motion to supersede the distringas. 2. Cui bono have the judgment and distringas, if it is instantly to be superseded ? 3. How is it that the executor can, upon this motion to the court, be permitted to controvert that intendment of the law, which he was not entitled -to contest during the pendency of the suit, so that the truth of his denial might be ascertained by the jury ? If the law will so intend the possession to be in the executor, that he cannot shew, by plea, that he has not, and never had the possession, how is it, that as soon as the judgment is rendered, and the fact of possession has been found by the jury, he can be admitted to deny it, and demand that the distringas shall be superseded, unless evidence of the possession be produced on the part of the plaintiff? 4. The remedy which is offered, may *369 fall short of its purpose. The statute which authorizes the supersedeas, does not vacate the distringas altogether, The court is only authorized, for good cause shewn, c£ to direct it to be superseded, so far as it relates to the specific thing, and to be executed for the alternative value or price only; so that, by his motion, the executor would indeed be relieved from the delivery of the specific thing, but could not be released from the process, until ho had paid the alternative value out of his own pocket. Moreover, if the distringas prove unavailing, the plaintiff might then move for a ca. sa. against the executor, since the judgment for the value is de bonis propriis* and thus the body of the executor is, for the *370 first time known to our law, to be subject to incarceration, not for his own act, but for the wrong of his testator. The counsel, so fruitful in expedients, I understood to suggest, that the sum recovered would be a pr0per cfigj-ge against the estate; but as this redress would not exist in case of a deficiency of assets, and as the principle of the law is to protect the executor’s own person and property, in the first instance, instead of leaving him exposed to the brunt of an execution, with the hope of indemnity from the assets, I cannot think there is any thing in this suggestion. If, to avoid these difficulties, we suppose that the executor may after the levy of the distringas go into the whole matter,— shew that he never had possession,—that his testator’s estate is insolvent,—that he can never be remunerated,—and that therefore an exoneretur should in effect he entered on the judgment; then, the execution, which has been usually considered to be the end of the law, would prove to be but the beginning of litigation; and a judgment solemnly rendered, would be subject to reversal before the same court, upon a matter of fact which was deemed to be so conclusively intended by the law, that it could not be denied by the defendant by way of plea to the action. These are consequences too serious to be overlooked, when we are invited to adopt a series of principles, for which, confessedly, no direct authority is to be found. The position, that, in the scire facias against the executor, he is to be considered, by intendment of law, in possession of the property, and cannot traverse that intendment, is utterly *371 irreconcileable with all the adjudications on the subject. If such intendment exists in the proceeding by scire facias, it must equally exist in the original action of detinue against the executor as such, since the scire facias is but the substitute for that action. Now, if every executor was, by intendment, held to be in possession, and thus liable to the action of detinue, how did it happen, that the question ever arose as to the liability of the executor when not in possession ? How could a question an'se as to the difference, in effect, between an actual and an intended possession, if the possession by intendment was sufficient, and if the defendant was not permitted to deny his actual possession ? And lastly, how could the executor discharge himself, by a relinquishment of the possession, which it has been already shewn he may do. 8 Vin. Abr. Detinue. D. 5. pl. 19. Yet all these established decisions a,nd principles, must be overruled, if we gratuitously adopt this doctrine of intendment;—gratuitously, I say, because there is no pretence of authority for it.
It is objected, however, that upon other principles the plaintiff must sustain loss. So he does, where the defendant dies during the pendency of an action of slander, for a base calumny; of assault and battery, false imprisonment, seduction or criminal conversation; yet there is no remedy. The action dies, and the plaintiff loses his remedy. So even in detinue, until 1831, the plaintiff could recover no hires for his slave, from the date of the verdict until the termination of an appeal in this court, during which time the slave himself might have become superannuated, and the recovery might have proved a burden instead of a benefit. It is not enough, that ingenious counsel shall be enabled to pour-tray a case of gross and crying injustice and hardship, to induce this court to remedy it by judicial legislation. The remedy must be found elsewhere.
*372 But what are the injuries apprehended ? It was said, the plaintiff may be barred by the statute of limitations. I am not prepared to say, that, even if this consequence were to follow, it ought to have any influence on the qUestion we have been discussing. It is of every day’s occurrence, that a party loses his remedy by the operation of the statute of limitations, where he has misconceived the tribunal he should invoke, Gray's adm'x v. Berryman, 4 Munf. 181. Elam v. Bass’s ex’ors, Id. 301. or has been forced to suffer a nonsuit, Peyton’s adm’r v. Carr’s ex’or, 1 Rand. 436. or is compelled to dismiss or discontinue his suit for defect in the proceedings, Callis v. Waddy, 2 Munf. 511. but, in none of these cases, has the particular injury he will sustain changed the course of adjudication. Yet it would certainly be satisfactory to know, that in adhering to the obvious principles which govern the action of detinue, and in following the precedents which have established them, we are not likely to do an injury to the party here, or to others in a like situation. I have therefore carefully looked into this part of the subject, and am inclined to the opinion, that the demand of the plaintiff, if asserted against the executor, in the shape of an action of trover or assumpsit, would not be barred by the operation of the statute. If the testator sold the property, pendente lite, I think it is clear that the statute would not avail the vendee, in a new action against him. For if he relied upon his vendor’s possession, that might certainly be rebutted by the abated action of detinue. So, if the testator dies in possession, and the executor abandons or relinquishes it, the true owner may take the possession at once, or may maintain detinue against any stranger who may have taken it, for whom the statute would be no defence until he had retained the possession five years. If, however, the testator had converted the property in his lifetime, then, by our statute, an action of trover would lie against his executors; so *373 too, according to the decision in Hambly v. Trott, 1 Cowp. 369. an a.ction for money had and received would lie, if the testator had sold the chattel and re-7 . ceived its value. If, then, the sale or conversion were more than five years anteriour to the death of the testator, the question would be, whether upon the abatement of the action of detinue, an action of trover or assumpsit could be maintained against the executor, without being affected by the statute. I answer, that the statute would be no bar to such action, if brought within one year after the abatement, according to the provisions of the statute of limitations, 1 Rev. Code, clt. 128. § 10. whereby it is provided, that if in any action, the judgment for the plaintiff is arrested or reversed for error, the plaintiff may commence a new action within a year. The case of an abatement by the death of the party has been decided to be within the equity of this statute; and it therefore only remains to be seen, whether after a.n abated action of detinue, an action of trover or assumpsit against the executor will be within that equity? 2 Str. 907. 1 Wash. 302. I am free to acknowledge, that there are some authorities, which seem to indicate an opinion, that a new action of journeys accounts at common law, must be of the same nature with the abated suit. 1 Ld. Raym. 434. 1 Bac. Abr. Abatement. Q. p. 30. citing 6 Co. 10. b. Lutw. 296. 1 Salk. 393. But this is obviously a question of construction of a statute, and that statute too a remedial one, which the courts have uniformly construed with the greatest liberality. Thus construed, I think we may safely affirm, that if the new action is for the same matter, it will suffice, though it be not of the same form or nature. The words of the act are general,—if judgment be given against the plaintiff that he take nothing by his bill, in all such cases, the plaintiff, his heirs, executors, or administrators, may commence a new action or suit. He is not then confined to the *374 same form of action, by the words of the law; and, peradventure, his judgment may have in fact have been arrested or reversed, precisely because his rights could not be properly asserted in the form of action he had se]ecte¿# Thus in Taylor v. Rainbow, 2 Hen. & Munf. 423. the judgment upon a verdict for 1000 dollars damages, for the loss of a leg' by the negligent discharge of a gun, was reversed in this court, after the pendency of the litigation for ten years, the court being of opinion that trespass vi et armis, and not an action on the case, was the proper remedy. If a new suit had been instituted for the same injury in trespass, could it have been seriously alleged, that that action would not have been within the meaning of this statute, which was obviously made to embrace all those eases, where a party having good cause of.action, has mistaken his remedy or his mode of pursuing it ? So, in Smith v. Segar, 3 Hen. & Munf. 394. and in Wilson v. Crowdhill, 2 Munf. 302. judgments for the plaintiffs were reversed, because the actions were debt, instead of assumpsit, against the acceptor of a bill of exchange. In the mean time, five years had elapsed. Was the creditor to lose his debt, because his counsel had misconceived his action? in which misconception he was sustained by the opinion of the supreme court of the U, States, in Raborg v. Peyton, 2 Wheat, 385. And, yet this must have been the consequence, if a new action of assumpsit, would not have been within the saving of the clause we are considering. So, it is the settled rule, that debt on simple contract will not lie against an executor; 1 Esp, 172. 1 Bos. & Pull. N. R. 298. If then, debt on simple contract is brought against the testator, and abates, as it must do, the debt may be bai*red, unless assumpsit, a different kind of action, can be brought against the executor, within the provisions- of the statute, And so as to this notion of detinue. If it has abated by the testator’s death (which it certainly has, if the executor has *375 never taken possession of the property), a new action ma.y be brought, in trover or assumpsit; and if the statute be pleaded, the plaintiff may reply the commencement, prosecution and abatement of the action of detinue, in .avoidance. And as in such action of trover, he would recover such damages as he could shew himself entitled to, he would, I presume, have those damages enhanced in proportion to the amount of the hires and profits which had been received by the testator; and thus full and ample justice will be done him.
It only remains to say, that for the reasons given by me for my opinion in Cloud v. Catlett’s ex’or, and in Allen’s ex’or v. Harlan, and on general principles, I continue to be of opinion, that the scire facias in detinue should set forth the possession by the executor. If It does not, it shews no right to revive, and no cause of action against him. This opinion is fortified by referring to the ancient forms ; in which I perceive, that even in the scire facias to revive the judgment in detinue against an executor, it is recited, that the possession has come to his hands. Rast. Ent. 215. b.
The scire facias here, then, being defective, I am of opinion, that the judgment should be reversed, and the proceedings set aside, as in Allen’s ex’or v. Harlan. For I cannot believe, that even the sweeping clause of the late statute of jeofails can justify a judgment for a plaintiff, who shews no cause of action whatever against the defendant; and if so, this judgment should be reversed, and the proceedings set aside, when the plaintiff may either declare in scire facias, with the proper averments, or may move to quash this irregular writ, and sue out another, with the necessary suggestion that possession of the chattel had come to the hands of the executor.*
*376 Judgment reversed, the verdict of the jury, and all the proceedings subsequent to the scire facias, set aside, *377 and the cause remanded to the circuit court for further proceedings to be had therein.

Note by the president. I am aware, that on this point, there is a difference between the members of the court. Some of my brethren think, that though the distringas must go against the executor for the goods if to be had, yet if not to be had, the execution should go against the estate for the value, and not against the executor personally. In this opinion 1 cannot concur, for many reasons. Let us suppose the executor sells the slave or other chattel; then, 1. the judgment against him being only in respect of his actual possession, he must he taken to have received the avails, for which, of course, he should be liable personally; for it would bo unjust to make the estate responsible for his personal wrong. 2. The estate, moreover, might be insolvent, and it would be unjust to turn the owner over to that, when the wealthy executor may have put the value of the chattel into his own pocket. 3. If the judgment he de bonis testatoris, it must be because the proceeds of the chattel converted by the executor, are to be taken to be part of the testator’s estate, which, by the way, contradicts Newsum v. Newsum, 1 Leigh 86. hut admitting it to be so, then this consequence will follow, that the value of my slave, sold by the executor during the pendency of my suit, for his recovery, may,—nay, must be,-—paid away by him in satisfaction of bonds, judgments and other demands of superiour dignity, and “no effects” may be returned upon my execution for the value. 4. If, as between these parties, the proceeds of the sale of the chattel are to he considered as part of the personal estate, still as it respects the sureties of the executor, it is clear they never could. For they are only bound for the administration of the goods and chattels of the testator and the title to the chattel being in a stranger, it could never have *370 been part of the testator’s goods, and therefore the sureties are not bound for it. Other difficulties might easily be suggested; but these I think will suffice. So far, therefore, from supposing the execution for the alternative value must go against the testator’s estate, the foregoing considerations give rise to very strong doubts •in my mind as to the propriety of a judgment de bonis testatoris, even for that portion of the hires which the executor may have received in his own time.

 Notes by the president.
I have intimated (in a former note) a doubt as to the suggestion in Allen’s ex’or v. Harlan, that the judgment for the profits accruing after the testator’s death ought to be against the executor de *376 . ... ..... . bonis testatoris. Upon examination of authorities m analogous cases (such as debt against an administrator, for rent in arrear, on a lease for years, accrued in the time as well of the intestate as of the administrator) I was inclined to think the opinion right. 1 Wms. Saund. 1. note 1. Id. 111. Wilson v. Wigg, 10 East 313. Lyddall &c. v. Dunlap &c. 1 Wils. 4. Roll’s Abr. 931. pl. 8. But the analogy is not complete, since in detinue the executor derives no title from the testator, whereas in the case of the lease for years, he actually holds an estate under him. On this point, therefore, I do not wish to he considered as giving a decided opinion.
The modem books of precedents containing but few forms of pleadings in the action of detinue, and that action being much in use among us, it may be acceptable to subjoin to my opinion, the following forms, translated from Rastall’s Entries, where several precedents may be seen, from 210. a. to 216. b.
1. Declaration for a silver cup against an executor, on a bailment to his testator. Rast. Ent. 212. b.
“ W. K. and T. C. executors of the last will and testament of W. L. deceased, were summoned to answer J. E. of a plea, that they render to him chattels to the value of 40 shillings, which from him they unjustly detain &c. And thereupon the said J. K. by J. B. his' attorney, says, that whereas, on the-day of-, at -, he delivered to the aforesaid W. L. in his lifetime chattels, to wit, one silver cup of the value aforesaid, to be by him safely kept, and to the said J. E. to be redelivered, when he the said W. L. should be thereto requested, and afterwards the aforesaid W. L. the testator &c. departed this life, after whose death the chattel aforesaid, among other goods and chattels which were of the aforesaid W L. at the time of his death, on the-day of-at --aforesaid, came to the hands and possession of the said executors ; yet neither the aforesaid W. L. in his lifetime, nor the aforesaid executors since the death of the said W. L. although often requested, have delivered the chattel aforesaid to the said J. E. but the same to him to deliver have refused, and the said executors still refuse to deliver the same to him, and unjustly detain it; whereby he saith he is injured and hath damage to the value of £ 100. and therefore he sues &c.
To this declaration the executors pleaded, that they “ did not detain the said chattel in form as the said plaintiff above against them •had declared, and of this they put themselves upon the country &c.”
*377 2. Scire facias against the executor on a judgment in detinue. Id. 215. b.
The king to the sheriff of B. greeting: Whereas J. T. at another time, to wit, in the term of St. Michael, in the year of our reign the 16th, in our court, before J. B. and his associates, then our justices in bank at W. by the consideration of the said court, recovered against R. F. two writings obligatory, which he unjustly detained, and thereupon it was considered in our said court, that the aforesaid J. T. should have against the aforesaid R. P. now deceased, the delivery of the said writings; yet execution of the said judgment still remains to be done; and the aforesaid writings after the death of the said R. F. came to the hands and possession of A. F. and J. F. executors of the testament of the said R. F. as from the suggestion of the said J. 7'. we have learned; and because we are willing &e. that those things which in our court have been rightly done, should be duly carried into execution, we command you, that by good and legal men of your county, you make known to the said executors, that they he before our justices at W. in the Octave of St. Michael, to shew cause if any they have, why the said J. T. should not have the delivery of the said writings against them, according to the form of the recovery aforesaid, if to him it seems expedient. And have there the names of those by whom you make known to them, and also this writ &e.
Upon this scire facias, the executors came into court, and tendered the writings to the plaintiff, who received them, and thereupon they were exonerated.
It is proper to observe, that the foregoing form of scire facias is somewhat varied from the form in Rastall referred to, though it will be found, on comparison, that the variance does not change its character.